UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |  |
|---|---|---|
| DYE SEED, INC., | ) | NO.  CV-12-0218-LRS |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION FOR PARTIAL SUMMARY |
| -vs- | ) | JUDGMENT |
| | ) | |
| FARMLAND MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BEFORE THE COURT** are each party's Motion For Partial Summary Judgment (ECF Nos. 14, 20) filed on March 14, 2013 and April 5, 2013 respectively.  A telephonic oral argument was held May 23, 2013.  Brian Sheldon participated on behalf of the Plaintiff; Toni Anders participated on behalf of Defendant.  At the conclusion of the hearing, the Court took the motions under advisement.  The Court having considered the oral and written argument of counsel, now enters this Order.

**I.   BRIEF BACKGROUND**

Plaintiff Dye Seed, Inc. ("Dye Seed") alleges that Defendant Farmland Mutual Insurance Company ("Farmland") owed a duty to defend Dye Seed in two underlying lawsuits. The first lawsuit, *The Scotts Company, LLC v. Dye Seed Ranch, Inc., et. al.*, U. S. Dist. Court, E.D. Wash, Case No. CV-10-136-LRS ("the Federal complaint") was filed by Scotts Company,

ORDER - 1

LLC ("Scotts") on September 24, 2010.  Scotts amended that complaint on November 12, 2010 ("the amended Federal complaint").  The second lawsuit, *Millhorn Farms, et. al v. Seeds, Inc., et.al.*, was filed in Whitman County Superior Court on October 6, 2010, ("the State court action").  Scotts filed a cross-claim against Dye Seed in the State court action on April 28, 2011.

Each of these underlying suits stemmed from disputes regarding the purchase and sale of common Kentucky bluegrass seed (CKBG). Scotts was the purchaser of the seed.  Dye Seed brokered the sales with numerous seed growers. Under this arrangement, Scotts agreed to purchase seed which conformed to specific quality standards and came from certain identified acreage.  Scotts alleged that Dye Seed breached the agreement by mixing non-contract acres and lower quality seed with the seed that Scotts agreed to purchase.

During the time of the sales transactions, and while the underlying suits were pending, Dye Seed was insured under Commercial General Liability ("CGL") insurance policies issued by Farmland.  These policies contained a Seed Merchants endorsement that expanded coverage to include coverage for damages stemming from the sale of wrong seed. After initially denying any coverage, Farmland agreed that the counter-claims filed by Scotts in the State court action alleged facts sufficient to trigger a duty to defend under the Seed Merchants endorsement. Thus, Farmland paid Dye Seed's defense costs in the State action commencing April 28, 2011.

Defendant Farmland asserts that neither the Federal action, nor the amended Federal action alleged facts sufficient to trigger a duty to

defend and has denied defense costs incurred in the Federal action.  Dye Seed conceded that the original Federal suit did not trigger Farmland's duty to defend. However, Dye Seed asserts that the allegations Scotts raised in its amended Federal complaint obligated Farmland to provide a defense.  The Farmland CGL policy (ECF No. 15-1) provides, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of... "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for... "property damage" to which this insurance does not apply.

The Seed Merchants Endorsement (ECF No. 15-1) amended and expanded the definition of "property damage" as follows:

Damages because of "property damage" include loss resulting from:

a. The erroneous delivery of seed, which includes :

(1) The failure to deliver seed;
(2) The delivery of wrong seed; or
(3) The delivery of seed at the wrong time or season;

b. An error in mechanical mixture of seed; or

c. The failure of seed to germinate...

## II. **Plaintiff's Partial Summary Judgment** (ECF No. 14)

Dye Seed asserts that the allegations in the amended Federal complaint were sufficient to trigger Farmland's duty to defend, although the allegations in the amended Federal complaint were not as explicit as those in the State court action.  Specifically, Scotts' amended Federal complaint alleged the following pertinent allegations:

1) Dye Seed Ranch agreed to procure and sell to Scotts certain common Kentucky bluegrass seed ("CKBG") and to provide services for the

ORDER - 3

benefit of Scotts concerning the quality control, processing packaging, marketing and sale of CKBG that is subject to the agreement. ¶12

2) Scotts agreed to pay Dye Ranch for the CKBG that is subject to the Scotts/Dye Agreement.  The price to be paid and the CKBG to be purchased... depend upon at least the variety, quality, source and resale of the CKBG. ¶ 13

3) The Scotts/Dye Agreement requires that Dye Ranch...deliver seed meeting quality standards from the specified contracted acres after processing. ¶ 14

4) Scotts auditing authority includes the authority to audit Dye Ranch's books and records to determine and confirm the source, quality and identity of the seed... ¶ 16

5) To date, the audit has consisted of a limited review of a limited number of Grower Contracts, sales information and harvest data, including documentation of harvest receipts, seed processing, seed testing, and payment to growers. Although the audit is not complete, Scotts has already identified a number of practices that are inconsistent with, and in breach of, Dye's contractual obligations. ¶ 19

6) Dye Ranch's refusal to produce its books and records sufficient to enable Scotts to audit Dye Ranch's performance under the contract and the source, quality, identity and characteristics of the product that Dye Ranch has identified to the contract has damaged Scotts, and will continue to damage Scotts, until and unless the audit is completed. ¶ 25

7) Dye Ranch has failed to discount or reject CKBG that failed to meet the quality standards contained in the Scotts/Dye Agreement and/or Grower Contracts. ¶ 27

8) Dye Ranch...failed to reconcile the listed acres under the approved Grower Contracts with the acreage from which the actual seed was delivered or allocated to Scotts. ¶ 29

Dye Seed further asserts that the amended Federal complaint also sought damages for breach of the Scotts/Dye Agreement.  Construing Scotts' amended Federal complaint liberally, as Farmland is obligated to do, Dye Seed argues it is apparent that Scotts was alleging that Dye Seed was selling seed that did not come from contracted acres and did not conform to the quality standard of the Scotts/Dye agreement - i.e., that Dye Seed sold the "wrong seed."  Dye Seed argues that the above

ORDER - 4

1  allegations and in particular, paragraph 27 and 29 of the amended Federal
2  complaint trigger Farmland's duty to defend.

3

4      Finally, at the time Farmland made its coverage determination,
5  Farmland was aware that Scotts was alleging that Dye Seed had sold Scotts
6  the wrong seed. Therefore, if there was any ambiguity regarding the
7  claims being made in the amended Federal action, those ambiguities were
8  clarified at the time that Farmland chose to deny coverage. Dye Seed
9  concludes it is entitled to recover attorney fees and costs resulting
10 from Farmland's improper coverage denial.

11 **III. Defendant's Motion For Partial Summary Judgment** (ECF No. 20)

12     Farmland's view is that no such duty to defend existed with respect
13 to the amended Federal complaint because there is no clear allegation in
14 that complaint that Scotts is seeking damages for the erroneous delivery
15 of seed.  The amended Federal complaint, Farmland argues, is clear and
16 unambiguous.  Farmland asserts that the claims stated therein, for breach
17 of contract, declaration of rights and specific performance, are not
18 claims for "damages" because of sale of the "wrong seed."  Farmland
19 argues that an allegation that seed may have failed to meet quality
20 standards in no way suggests delivery of the "wrong seed." Farmland
21 explains that products can fail quality standards for a variety of
22 reasons having nothing to do with delivery of the wrong product.

23     Additionally, an allegation that Dye Seed failed to reconcile a list
24 of approved growers' acreage with acreage from which seed was actually
25 delivered is consistent with Scotts' continued request, in the Federal
26 action, for specific performance from Dye Seed in the form of providing

books and records sufficient for Scotts to perform its audit.  Scotts' amended Federal complaint explicitly pled specific performance, which is not a claim for damages, Farmland concludes.

Farmland states its "investigation" disclosed that neither Scotts nor Dye Seed had interpreted the federal amended complaint to allege an erroneous delivery of seed.  Farmland argues it was not until April 2011 that Scotts' attorney developed the "newly minted theory" of delivery of "wrong seed."  Farmland bases this theory, in part, on a December 15, 2011 letter from Stephen Phillabaum to Farmland which read, in pertinent part:

> Days prior to the growers' suit, Scotts sued Dye and Seeds in federal court alleging that Dye and Seeds had not allowed audits.  Dye and Seeds denied the allegations, alleged the growers were necessary parties whose joinder would destroy diversity, and obtained a dismissal of the federal court action.  Although that dismissal is currently under appeal with the 9th Circuit Court of Appeals, the federal case does not involve the substantive issues involved in the Whitman County, Washington case.

ECF No. 18 at 8.

Farmland further argues that although it exchanged letters with Dye Seed's counsel after the December letter, Dye Seed did not dispute the facts stated in the letter nor did it offer any other facts which might tend to prove a claim within coverage of the Seed Merchants endorsement. Farmland states Dye Seed's only argument was, and remains, that Farmland cannot consider the above statements in the letter in making its coverage determination.

Defense argues at best Scotts sought specific performance so it could audit Dye Seed's books and records in order to determine whether Dye Seed's practices were consistent with their agreement.  Farmland

ORDER - 6

explains that there is a difference between stating a claim which seeks damages because of the delivery of "wrong seed" and seeking information which might, at some future point, suggest a basis for alleging a claim for damages because of delivery of the "wrong seed." Farmland concludes that the amended Federal complaint, read as a whole, does not state a claim potentially covered by the Seed Merchants endorsement of the Farmland insurance policy.

**IV. Discussion**

The duty to defend is a primary benefit of an insurance contract. *Safeco Ins. Co. of Am. v. Butler*, 118 Wash.2d 383, 392, 823 P.2d 499 (1992)). Washington courts have long held that the duty to defend is different from and broader than the duty to indemnify. *Id.* (citing 1A ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 5B.15, at 5B–143 (1986)). Any ambiguity in the complaint against the insured is liberally construed in favor of triggering the insurer's duty to defend. *Truck Ins. Exch. v. Van Port Homes, Inc.*, 147 Wash.2d 751, 760, 58 P.3d 276 (2002).

The insurer is entitled to investigate the facts and dispute the insured's interpretation of the law, but if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend. Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend. *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 561, 951 P.2d 1124 (1998). The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend — it may do so only to trigger the duty. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53-54, 164 P.3d 454 (2007).

1       The Court finds that Farmland's obligation to defend arises from

2   the liberally construed allegations in the amended Federal complaint and

3   the language in the insurance policy. Farmland's heavy reliance on the

4   December 15, 2011 letter from Steve Phillabaum to Farmland is unavailing.

5   This is so because the language "substantive issues" referred to in the

6   letter is not sufficiently defined as to work an estoppel and cannot be

7   construed as a waiver of coverage based on the allegations in the amended

8   Federal complaint and the language in the insurance policy. Farmland's

9   investigation of the insured's claim, which heavily leaned on the

10  December 15, 2011 letter, was not sufficient in the context of the policy

11  language to deny Defendant coverage.

12      Farmland's theory that Scotts only sought specific performance

13  (audit Dye Seed's books and records) and if an audit showed that "wrong

14  seed" was delivered, only then would a covered claim arise requiring

15  defense representation, denies the obvious. The obvious being that if

16  an audit does show a discrepancy and an erroneous delivery of seed,

17  damages are specifically sought in the amended Federal complaint.

18  Paragraph 33 of the amended Federal complaint reads:

19          As a proximate cause of Dye Ranch's breaches of the
            Agreement, Scotts is entitled to recover the following
20          **damages,** declaratory, and equitable relief:
            ...
21          (C) An award of **damages** from Dye Ranch in an amount to
            be determined at trial. [Emphasis added.]
22

23  The Court agrees with Plaintiff that Scotts' claim for "damages" is

24  sufficient to trigger Farmland's duty to defend. Under the Seed

25  Merchants Endorsement, "erroneous delivery of seed" could include no

26  delivery of seed at all, delivery of "wrong seed," or delivery of right

    seed "at the wrong time or season." An insurer's duty to defend arises

ORDER - 8

when <u>any</u> part of the claim is potentially or arguably within the scope of the policy's coverage, even if the allegations of the suit are false, fraudulent, or groundless." 14 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 200:12 at 200-35 to 200-36 (3d ed.2005).  Any ambiguity in the complaint against the insured is liberally construed in favor of triggering the insurer's duty to defend. *Truck* at 760.  Even if an audit revealed that the seeds delivered were correct, the duty to defend arises when any part of the claim is <u>potentially</u> within the scope of the policy's coverage.

Finally, it matters not that Scotts' counsel did not begin pursuing the theory of erroneous delivery of "wrong seed" until April, 2011, based on the fact that Scotts did allege a breach of the agreement in the amended Federal Complaint on November 12, 2010.  The theory of erroneous delivery of "wrong seed" was inherent in the language used in the amended Federal Complaint.  Any reasonable interpretation of the language, particularly in paragraphs 27 and 29, when joined with the request for damages in paragraph 33 of the amended Federal complaint, would indicate that Scotts was looking for compensation if the "wrong seed" was delivered.

**V.   Attorney Fees**

An insured that is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to recover an award of attorney fees to compensate it for the legal expenses incurred in vindicating the right to the claimed benefit. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wash.2d 37, 52-3, 811 P.2d 673 (1991). Because Dye Seed was required to initiate this action in order to obtain

ORDER - 9

1  the benefits to which it was entitled, it is entitled to an award of

2  attorney fees in this court.

3   Accordingly,

4      **IT IS ORDERED** that:

5      1.  Plaintiff's Motion for Partial Summary Judgment, **ECF No. 14**, is

6  **GRANTED.** Defendant Farmland has a duty to reimburse Plaintiff Dye Seed,

7  Inc. for its defense costs incurred in the defense of the amended Federal

8  complaint filed by Scotts against Dye Seed in federal court on November

9  12, 2010 (CV-10-326-LRS).  Plaintiff shall file with this Court, within

10 ten (10) days of this Order, a declaration itemizing and setting forth

11 its fees and expenses which have been incurred.  Counsel for the

12 Defendant shall file any objection(s) thereto within ten (10) days

13 following filing of Plaintiff's declaration.  Plaintiff shall have five

14 (5) days thereafter to respond to any objections after which the matter

15 will be deemed under advisement without oral argument.

16     2.  Defendant'S Motion for Partial Summary Judgment, **ECF No. 20,** is

17 **DENIED.**

18     **IT IS SO ORDERED.**

19     The District Court Executive is directed to enter this Order and

20 judgment consistent with this Order.

21     **DATED** this 19th day of June, 2013.

22

23                                      *s/Lonny R. Suko*

                                _____
24                                      LONNY R. SUKO
                                 UNITED STATES DISTRICT JUDGE

25

26

ORDER - 10